We have five cases on the calendar this morning, four patent cases, three from the PTAB and one from the District Court, and an employee case from the MSPB that is submitted on the briefs and will not be argued. The first case is Chamberlain Group v. One World Technologies, 2019, 13-14, and 13-15. Ms. Bedell. Thank you, Your Honor. May it please the Court. The final written decision in IPR 2017-1132 and 2017-1137 was fundamentally in error. The red brief at page 29 admits that the only issue before this Court when it comes to the one network, one device claim limitation is express anticipation, not inherency. The Board's decision in both of those petitions applied the wrong test. The Board applied Inree Baxter, Dayco, and Eli Lilly, all standing for the proposition that the dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior references teaching that every claim element was disclosed in that single reference. That particular test is not a test for express anticipation. That is a test for inherency. Since the Board applied the wrong test, that is ground alone for reversal of the Board's decision. But even under the proper test, there was not substantial evidence that that element existed or was taught by Menard. What's the key claim limitation here? Responding to requests? And is that in Menard? So in Menard, the key claim limitation is that the request for a status update and the response have to be transmitted on the same network. That's in every single one of the claims. With regard to Claim 12, and that claim set, there's an additional claim limitation that relates to it being transmitted and received by the same device. So that's the only real dispute with regard to all of the claims. And with regard to that, if you look at the record as a whole, at most you could say that the record is ambiguous. That said, if you focus on the extrinsic evidence, the extrinsic evidence suggests that there's not one network on which those transmissions are made. And in fact, to show that there's one network, one world's position is that the pager and the pager network, the two-way pager network disclosed in paragraph 50 of Menard discloses this concept of one network. And it does not. If you actually turn to paragraph 50, the language that One World Technology is relying on is a language at the very bottom of the paragraph that says, the outbound signal, e.g. indicating the door position, may be transmitted to the pager on a predetermined schedule or upon inquiry, and that's the key language, or upon a change of position of the door or actuator at any time. One World Technology is taking the position that the upon inquiry is met by the pager network, that it's only the pager that's going to make that inquiry. And that is not consistent with figure eight of the patent. If you turn to figure eight, figure eight shows the process by which the garage door opener communicates with the user. And if you look at figure eight, the process that's being disclosed is a process that is The 977 patent teaches a process relating to status updates and a user being able to initiate a session in order to get the status of the garage door opener. Figure eight discloses something much different. It actually discloses more of a notification or alert system. So if you look at figure eight, it starts with block 360, where the very first step is establishing a communication channel. And if you look at all the rest of the steps, these are the steps that are employed once the communication channel is established. So if you step through it, the very first communication between the garage door opener and the pager would be to notify the pager of the door position. It's funny, I don't have a figure eight. The figure eight in Menard is at... Oh, in Menard. I think you're talking about your patent. Oh, no. I'm talking about Menard and what Menard discloses. So if you look at figure eight, the very first communication between the pager and the garage door opener is a signal that is sent from the garage door opener to the pager, notifying the pager of the door position. But both parties agree that as a predicate to everything that's happening in figure eight, you must first determine the status of the garage door. You must have a status to actually transmit. So that must occur outside of this figure and must occur before step 360, where the communication channel is established between the pager and the garage door opener. So for that reason alone, the intrinsic records suggest that the pager cannot be sending the status request and then receiving the status signal on a single network. Even if inherency were before the court, which it is not, the board got the test wrong even as to inherency. And in fact, the board's opinion suggests that there's a bigger issue brewing, that there's some confusion as to the legal framework for anticipation. First of all, the board applied this inference test from Iainry Baxter in the context of express anticipation and not inherent anticipation, suggesting there may be some confusion there. But with regard to inherency itself, if the inference test is not bounded by the necessary disclosure test, then the test that was applied was improper. And so there's some confusion there. Because if you were to look at the board's decisions, the board decision only relies on part of the test and suggests that if there's just an inference to one of skill and the element is there, that is sufficient for inherency. And it is not under this court's jurisprudence. What the court actually did, in view of the fact that it was applying the wrong test, is engaged in gap filling based on conclusory expert testimony. It used the 977 patent as a roadmap to recombine the elements of Menard to try and meet the patent. Obviousness is not before the board, so it was improper for them to do that. It's also not before this court. It would be improper under SAS for that to be a ground for the court to consider. And it's a ground that One World Technology has waived. The only other issue before this court is whether the TCPIP network interface limitation in Claim 9, whether that was present in Menard, and whether the board's decision on that was correct. The board's decision suffers from some of the same issues as with regard to the initial claim element. First of all, although the board did make it express that it was applying the inherency standard, it only applied this inference test. It didn't actually determine whether the element was necessarily present. So, on that ground alone, that finding should be reversed. Beyond that, there was no substantial evidence in the record to support the board's decision. Lastly, I want to address very briefly the red brief and a few of the issues that I noted in the red brief. First, One World Technology actually repeats the board's misstatements of law and relies on the same inference test that I've been referring to. They also misrepresent the record. At red brief 28 to 29, they truncate Dr. Davis' testimony. He was one of CGI's experts in order to make their point. They also truncate Chamberlain's counsel's arguments in order to make their points. We've addressed all of that at gray brief 6 to 9 and page 14. They also invite this court to ignore black letter administrative law and make factual findings in the first instance. If there are no questions, I'll reserve my time. We will save it for you, Ms. Vidal. Mr. Peterson. Thank you. May it please the court. Your Honor, in a thorough and well-reasoned opinion, the board considered and projected the arguments raised by Chamberlain, choosing instead to credit the testimony of One World's expert. Substantial evidence supports the board's findings, and its decision should be affirmed. Obviously, there's a clear disagreement between my friend and myself over the standard for anticipation, and as we understand the standard for express anticipation, anticipation is a question viewed from the perspective of one of skill in the art, and the question for express anticipation is whether one skilled in the art would reasonably understand or infer that every claim element is disclosed. My friend quarrels with that standard. I'll note she did not cite any case for you that suggested that there was a different test for express anticipation. Didn't cite any case that said it is improper to consider anticipation from the perspective of one of skill in the art, and that's precisely what the board did here. The board looked at the disclosure of Menard, including paragraph 15. A claim limitation does have to be in the prior art. Absolutely, Your Honor. It certainly does need to be disclosed in the prior art, but we ask, look at that prior art from the perspective of one of ordinary skill in the art, as we look at virtually everything in patent law, and so when we look at this earlier issue, when we look at the Menard reference, we don't simply look. I believe my friend is suggesting a four corners rule that it has to be apparent to a layperson on the face of the reference in order for there to be express anticipation, and there's no authority that supports that. Express anticipation and the prior art is viewed from the perspective of one of ordinary skill in the art. Here, the board, looking at paragraph 50, credited the testimony of one world's expert that the reference to the inquiry in the third sentence of paragraph 50 was referring to an inquiry sent from the two-way pager that Menard was referencing in the previous sentence, and that grammatical rule that the pager is referring to the same pager referenced in the previous sentence is the very same rule that the board applied in concluding that the inquiry needs to be sent and responded to over the same network, so it's hardly surprising that the board would apply that same principle here, and the question, of course, is in context. What is that inquiry referring to? Obviously, one of skill in the art is fully aware that a two-way pager communicates bidirectionally. Unlike a one-way pager, it both sends and receives messages over the two-way pager network, and the board not only looked at this in paragraph 50, but noted that this understanding of Menard was consistent with the broader purpose of Menard, and I'll point you to appendix page 32, where the board credited and relied on Menard's explanation of its purpose. Menard said that one of the problems it was trying to solve was the very same problem that the 977 patent was trying to solve, that garage door openers lack any feedback to indicate the position of the door to the user, and Menard specifically notes the problems of users that have driven out of view and need feedback on the position of the door. Worse, the board said, if we understand that this inquiry comes from the two-way pager that Menard was using, that the user uses to communicate, then the user receives feedback on that door position, and Menard solves the problem. That's communication back and forth over the two-way pager network. But the board's analysis of Menard wasn't limited to paragraph 50. If you look on appendix page 28, you'll see the board quotes Menard, noting, Menard makes clear that its system allows remote control and management of single or multiple door openers using a wired or wireless communications device, including a cellular telephone, a pager, a personal digital assistant, a computer, or other device that communicates using a network. And as part of that remote control and management, the board concluded, if you look at the carryover sentence from appendix page 32 to appendix page 33, that one of skill in the art, an ordinarily skilled artisan, would have understood that requesting and receiving the door position status are basic steps for operating the door remotely. I don't understand my friend's argument with respect to figure 8. The board considered this. You'll see its analysis on appendix pages 29 to 33 and concluded that nothing in figure 8 was inconsistent with the pager sending the inquiry. Both experts testified about this. I'm looking at the testimony of Chamberlain's expert on appendix page 943 to 944, where he explains that none of the three conditions in paragraph 50 are described with respect to figure 8, but all of those three triggers for the inquiry and the transmission of the status position, quote, would result in this flowchart being exercised. The board relied on that testimony in finding that Menard disclosed the transmission and receipt of a status request over the same network. Unless the panel has questions, I'd like to turn briefly to claim 9, and that's the generating a web page accessible from the Internet, inherently disclosing TCP IP communications. The board credited the testimony of One World's expert on this point, specifically testimony, you'll see this on appendix page 112, that data that can be accessed using an Internet browser is sent over TCP IP. And similarly on appendix page 114, the board credited the testimony of Mr. Lipov that there were no Internet web servers in use at the time of the invention or at the time of Menard that did not support and use TCP. Menard expressly teaches not just the Internet as a whole, but generating web pages accessible from the Internet or a WAP server that generates data that can be accessed using an Internet browser. Our expert testified that generating data, accessing data using an Internet browser and generating web pages requires use of the TCP IP interface. The board credited that, and we believe substantial evidence supports that finding. Unless the panel has questions, I'm happy to yield the remainder of my time. Thank you, counsel. We will proceed. Ms. Vidal has some rebuttal time. Thank you, Your Honor. Henry Baxter stands for the proposition that expert testimony under anticipation can be used to explain a reference but not expand the reference. And that's what One World Technology is trying to do here. They're using conclusory expert testimony to try and expand the reference and gap fill in this limitation that the request for a status and the response is transmitted over the same network. There is no express disclosure of that anywhere within Menard. And in fact, if you look at the intrinsic record, the only two-way communication disclosed with regard to the pager is in paragraph 50 of Menard, and that discloses only two steps. First, on one channel, the pager will receive the status. So it will receive, for example, whether the garage door is open or closed. And then on the other channel, it can submit a command to close or open the door. If you turn to figure 8 of Menard, it shows those two steps as 370 and 380. First, the user is notified of the door position and then can submit on the other channel a request for the garage door to be closed or open or to change status. And the reason I think figure 8 is so dispositive of this is that both parties agree that the last sentence in figure 50, talking about the status inquiry, that that has to occur before you go through the steps of figure 8. If you look at petitioner's reply to the patent owner's response, it says, and this is at appendix 674, figure 8, however, is limited to the later operations of receiving door position information and controlling the door from a remote location. A person of ordinary skill in the art would have understood that the status inquiry necessarily occurs before determining and transmitting the door status over the network. So the parties agree that that precondition of having an inquiry as to the status has to occur before the steps in figure 8. And if you look at step 360, that is when the pager is actually first connected to the garage door opener. So the pager cannot be requesting status updates when it's not even connected. So the intrinsic record itself suggests that the pager cannot be sending requests and receiving responses over the same network. And at most, the issue is ambiguous as to whether the prior art teaches it, and that's not sufficient under this court's jurisprudence. Thank you, Your Honor. Thank you. Ms. Vidal, case is submitted.